# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>JASON ALLEN FREE,<br><br>        Defendant. | 8:19CR337<br><br>FINDINGS AND<br>RECOMMENDATION |

      This matter is before the Court on the Motion to Suppress Evidence (Filing No. 42) filed by Defendant, Jason Allen Free. Defendant filed a brief in support of the motion (Filing No. 43), the government filed a brief in opposition (Filing No. 49), and Defendant filed a reply brief (Filing No. 51).

      The Court held an evidentiary hearing on the motion on June 25, 2020. Defendant was present with his attorney, John J. Velasquez. The government was represented by Assistant United States Attorney, Lecia Wright. FBI Special Agent Jeffrey Howard ("SA Howard") testified on behalf of the government. Exhibit 1 was offered by the government and received without objection. A transcript (TR.) of the hearing was prepared and filed on July 20, 2020. (Filing No. 61). The matter is now fully submitted to the Court. For the following reasons, the undersigned magistrate judge recommends that the motion be denied.

## BACKGROUND

      SA Howard testified that he first spoke to Defendant in June 2019, during the investigation leading to the sexual abuse charges filed against Defendant in this case. Before speaking to Defendant, SA Howard read Defendant *Miranda* warnings from a preprinted card. (TR. 7-8). Defendant does not seek to suppress any statements he made during this interview.

      Thereafter, an Indictment charging Defendant with one count of sexual abuse of an incapable victim was filed on October 22, 2019. (Filing No. 1). Defendant was taken into custody pursuant to an arrest warrant. On October 28, 2019, while SA Howard was transporting Defendant to the courthouse for an initial appearance and arraignment on the charge in the Indictment, Defendant made statements to SA Howard that Defendant now seeks to suppress. On this occasion, prior to speaking to Defendant, SA Howard stated the following:

> Ok, so, I'm just gonna advise you of your rights in case you want to talk on the way down [to your court appearance], alright? Um, you have the right to remain silent. Anything you say can be used against you. You have the right to an attorney. If you can't afford one, one will be appointed for you. Um, when we get down there [to the court] you **will** get an attorney. Um, would you be willing to talk to me for a little bit, until you decide you don't want to, depending on what the question is? Would that be alright?

See Exhibit 1 - Vehicle Audio Recording (emphasis added where SA Howard added emphasis). Defendant replied, "Yeah," and engaged in a brief conversation with SA Howard. After answering a few of SA Howard's questions over the span of approximately 41-seconds, in response to one of SA Howard's questions about the factual allegations in this case, Defendant declined to answer and instead stated something to the effect of, "I'll wait till I get my lawyer." SA Howard said, "Okay," and Defendant made no further statements. See Ex. 1 at 1:12. Defendant now seeks to suppress the statements he made during this conversation as violative of *Miranda* and the Fifth Amendment because SA Howard's warning did not advise Defendant of his right to have counsel before and during questioning or to have appointed counsel prior questioning.[1] (Filing No. 51; TR. 3-4, 14).

## ANALYSIS

Pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), in order to safeguard an individual's Fifth Amendment right against self-incrimination, before an individual in custody may be interrogated, he or she must be warned:

> that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Id.* at 479. "The prophylactic *Miranda* warnings . . . are 'not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected.'" *New York v. Quarles*, 467 U.S. 649, 654 (1984)(quoting *Michigan v. Tucker*, 417 U.S. 433, 444 (1974)). The Supreme Court has "never insisted that *Miranda* warnings be given in the exact form described in that decision," and "no talismanic incantation

---

[1] Defendant initially raised additional arguments regarding the Sixth and Fourteenth Amendments, but at the hearing limited his arguments to the *Miranda* and Fifth Amendment violation.

[is] required to satisfy its strictures." *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989)(citations omitted). "The inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda*.'" *Duckworth*, 492 U.S. at 203 (quoting *California v. Prysock,* 453 U.S. 355, 361 (1981) (per curiam)).

Relying on *Duckworth*, Defendant argues SA Howard's warnings were constitutionally deficient because he did not specifically advise Defendant of his right to have counsel before and during questioning, and to have court-appointed counsel during questioning. ([Filing No. 43 at pp. 2-3](#)). In *Duckworth*, the Supreme Court found that an officer's advisement that an attorney would be appointed for the defendant "if and when you go to court" was not a defective *Miranda* warning, in part because the defendant was also informed "that he has the right to an attorney before and during questioning, and that an attorney would be appointed for him if he could not afford one." *Duckworth*, 492 U.S. at 204. Similarly, in *Prysock*, the Supreme Court rejected a defendant's argument that *Miranda* warnings were inadequate because the defendant was not explicitly informed of his right to court-appointed counsel before questioning, observing that he had been advised of his right to talk to an attorney before and during questioning, and to have an attorney appointed if he could not afford one. *Prysock,* 453 U.S. at 361. The Supreme Court concluded that "nothing in the warnings . . . suggested any limitation on the right to the presence of appointed counsel different from the clearly conveyed rights to a lawyer in general, including the right to a lawyer before you are questioned, . . . while you are being questioned, and all during the questioning." *Id.* at 360-61 (internal quotation marks omitted).

*Duckworth* and *Prysock* do contain language that lends some support to Defendant's argument that SA Howard's general warning regarding Defendant's right to an attorney was deficient because, unlike those cases, SA Howard did not specifically state Defendant's right to an attorney extended to before and during questioning. However, the Eighth Circuit in *United States v. Caldwell*, 954 F.2d 496 (8th Cir. 1992) explained that the holdings in *Duckworth* and *Prysock* were not contingent upon the fact that the defendants in those cases received that explicit warning. Instead, the Eighth Circuit explained that the inadequacy discussed in *Duckworth* and *Prysock* was that the "right to appointed counsel [was linked] to a future point in time after interrogation," not that the advisement regarding the right to counsel was too general. *Caldwell*, 954 F.2d at 502. The Eighth Circuit recognized it "has not strictly required that a defendant be explicitly advised of his right to an attorney before and during questioning," and on

3

plain error review, found the following statement adequately advised a defendant of his right to an attorney:

> You got the right to remain silent. Anything you say will and can be used against you in the court of law. You have a right for an attorney. If you can't afford one, one will be appointed to you.

*Caldwell*, 954 F.2d at 498-503.

As in this case, the defendant in *Caldwell* argued the general advisement did not specifically warn him of his right to counsel before and during the interrogation. *Id.* at 502. True, the circuit acknowledged the officer "could, and arguably should, have been more explicit in advising [the defendant] of his right to an attorney," but nevertheless concluded the general warning did not rise to the level of plain error because the defendant was advised he has the right to remain silent, the right to an attorney, that anything he says may be used against him, and that if he cannot afford an attorney one will be appointed for him. *Id.* at 503-04. Nothing about the advisement was misleading and did not link the defendant's right to an attorney to a future point in time after police questioning. See *id.* ("[T]he general warning that [the defendant] had the right to an attorney, which immediately followed the warning that he had the right to remain silent, could not have misled [him] into believing that an attorney could not be present during questioning."). As such, the warning provided did not rise to the level of plain error.

The undersigned recognizes that the plain error standard used by the court in *Caldwell* means that the same general rights advisement may not withstand stricter scrutiny where the issue is properly preserved for the court's review. However, the undersigned finds that the warnings provided by SA Howard in this case, and the context in which they were given to Defendant, were much less ambiguous than the warnings given in *Caldwell*. SA Howard's advisement was not misleading, did not suggest a false limitation of Defendant's right to counsel, and did not link Defendant's right to counsel to a future point in time after questioning. See *id*. at 502 ("If there was a deficiency in the warning, it is in the ambiguity of the warning, not that the warning actively misled [the defendant] by suggesting a false limitation of his right to counsel."). Taken as a whole, SA Howard's advisement to Defendant "touched all of the bases required by *Miranda*" and reasonably conveyed Defendant's right to have an attorney present during questioning, court-appointed or otherwise. See *Duckworth*, 492 U.S. at 203.

First, SA Howard made it clear at the outset he was advising Defendant of his rights "in case you want to talk on the way down" to Defendant's court appearance. The rights advisement following SA Howard's opening statement would plainly be understood to apply to any questioning at that time while driving to his court appearance. See *Rhines v. Young*, 899 F.3d 482, 487 (8th Cir. 2018), *cert. denied*, 139 S. Ct. 1567 (2019)("[The defendant was told of his right to an attorney at the beginning of each interview, a warning that plainly communicated the right to have an attorney present at that time."). SA Howard told Defendant, "You have the right to an attorney. If you can't afford one, one will be appointed for you. . . . [W]hen we get down there [to the court] you **will** get an attorney." SA Howard's statement (and voice inflection) informed Defendant he had a right to an attorney if he made statements while driving to his court appearance, but also that an attorney was going to be appointed for him once he arrived at his court hearing. SA Howard's advisement did not imply that Defendant could not have an attorney present during any questioning on his way to his court hearing, and accurately informed Defendant that he would receive court appointed counsel at his hearing. See *Duckworth*, 492 U.S. at 204 (informing a suspect that an attorney would be appointed for him "if and when you go to court" accurately described the procedure for appointment of counsel). Taken in context, SA Howard's advisement did not link Defendant's right to an attorney to some future point in time after questioning and clearly conveyed that it applied to any statements Defendant made at that time. See *Caldwell*, 954 F.2d at 502.

Further, SA Howard was reciting *Miranda* warnings from memory while driving Defendant to the courthouse; it is unrealistic to expect the same level of formality or "rigidity" in the rights advisement or Defendant's waiver under such circumstances. See *Caldwell*, 954 F.2d at 503 (quoting *United States v. Adams*, 484 F.2d 357 (7th Cir. 1973))("[F]ailure to specifically inform the defendant of his right to an attorney during questioning was not fatal, especially when the police provided the warnings 'on the street' and not at the police station. . . . It is unrealistic to expect the same degree of formality with respect to waiver and question 'on the street' as in the station-house.")(internal quotation marks omitted).

Finally, it is apparent Defendant understood his right to have an attorney present during questioning because Defendant stopped answering SA Howard's questions and invoked that right only 41-seconds after agreeing to talk, stating he wanted to "wait until I get my lawyer." See *Rhines*, 899 F.3d at 487 (affirming lower court's conclusion that *Miranda* warnings

reasonably conveyed to a defendant his rights, evidenced in part by the defendant's turning off of a recording device when asked about a topic he did not wish to discuss). Defendant made no further statements after stating he wanted to wait for his lawyer, which demonstrates he actually understood his right to remain silent and right to counsel during questioning. Under the circumstances, the undersigned concludes SA Howard's warnings to Defendant adequately and reasonably conveyed his right to counsel as required by *Miranda* and the Fifth Amendment.

The undersigned next finds Defendant made a voluntary, knowing, and intelligent waiver of his rights. Defendant only argues he "could not waive what he was not informed of in the first place." ([Filing No. 51 at p. 2](#)); see *United States v. Gallardo,* 495 F.3d 982, 990 (8th Cir. 2007)("To make a knowing and intelligent waiver, the defendant must have 'full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'"). As discussed above, SA Howard's advisement adequately conveyed Defendant's rights under *Miranda*. And, the totality of the circumstances demonstrate that Defendant validly waived those rights. *United States v. Vinton*, 631 F.3d 476, 482-83 (8th Cir. 2011)("In considering the validity of a *Miranda* waiver, courts look at the totality of the circumstances, including the defendant's intelligence, education, age, familiarity with the criminal justice system, and the explicitness of the waiver."). Review of the audio recording demonstrates SA Howard's tone was conversational and was not intimidating, coercive, or deceptive. SA Howard clearly informed Defendant that talking on the ride to his court hearing was optional, asking Defendant if he would be "willing to talk to me for a little bit, until you decide you don't want to, depending on what the question is." Defendant had been interrogated by SA Howard a few months prior to this occasion and was read his *Miranda* rights from a preprinted card at that time. Defendant does not otherwise assert he lacked intelligence or education rendering him incapable of understanding the warnings provided him or the consequences of his decision to waive his rights. Under the circumstances, Defendant's waiver was valid.

For the foregoing reasons, the undersigned magistrate judge finds that the warnings provided to Defendant by SA Howard complied with *Miranda* and did not violate the Fifth Amendment, and that Defendant validly waived his rights. Upon consideration,

**IT IS HEREBY RECOMMENDED** to Senior United States District Court Judge Laurie Smith Camp that Defendant's Motion to Suppress Evidence ([Filing No. 42](#)) be denied.

Dated this 27th day of July, 2020.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge

## ADMONITION

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.